629 So.2d 507 (1993)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
LLOYD'S UNDERWRITERS and Other British Insurance Companies Subscribing to Policy Number GCM 12535.
OCEAN ENERGY, INC.
v.
FIRST NATIONAL BANK OF JEFFERSON PARISH.
Nos. 93-CA-16, 93-CA-17 and 93-CA-160.
Court of Appeal of Louisiana, Fifth Circuit.
December 10, 1993.
Rehearing Denied January 18, 1994.
John T. Nesser, III, David S. Bland, Clare P. Hunter, Elizabeth S. Wheeler, New Orleans, *508 for appellants Ocean Energy, Inc., Power Well Service, Inc., Albert W. Gunther, William Barnett and John Powers.
Rudy J. Cerone, Trial Atty., R. O'Neal Chadwick, Jr., McGlinchey Stafford Lang, a Law Corporation, New Orleans, for appellee First Nat. Bank of Jefferson Parish.
Donald A. Hoffman, New Orleans, for appellees, Underwriters Certain Underwriters at Lloyds and Other British Ins. Companies Subscribing to Policy GCM 12535.
Before WICKER, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
In rather involved litigation, the trial court has granted, before trial, several exceptions of no cause of action and several motions for summary judgment on certain issues in the case. Various issues still remain for trial. The losing parties in these pre-trial rulings have appealed. We reverse and remand.
The facts giving rise to this litigation are as follows. In April of 1987, the liftboat M/V Mr. Don, operating as a workover drilling rig, was owned by Ocean Energy, Inc. (Ocean). It was mastered by an employee of Power Well Service, Inc. (Power Well) and was encumbered by several preferred ship mortgages in favor of First National Bank of Jefferson Parish (FNJ). The vessel was insured for $3.5 million by an hull insurance policy issued by Gulf Coast Marine, Inc. and Underwriters at Lloyds, London (Lloyds). Ocean was the named insured on the policy, as the owner of the vessel. Power Well was also a named insured, as operator of the vessel. The policy provided mortgagee coverage for FNJ, who was listed as an additional loss-payee. On April 12, 1987, the M/V Mr. Don capsized and sank in the Gulf of Mexico. All parties agreed that the vessel was a constructive total loss. FNJ sought to recover from Lloyds the full policy limits ($3.5 million) to apply to Ocean's outstanding indebtedness. Lloyds refused payment under the policy. Consequently, on November 23, 1987, FNJ, as loss-payee under the policy, sued Lloyds in case No. 354-478 (the Insurance Litigation) in the 24th Judicial District Court. After a period of negotiation, in January of 1988, Lloyds agreed to pay the policy proceeds to FNJ in return for a Release and Indemnity Agreement (Release Agreement) signed by FNJ, Ocean and Power Well, releasing Lloyd from any further liability. Pursuant thereto, Lloyds paid FNJ $3,466,986.65 in settlement of the claim. The remaining $33,013,35 was withheld to pay one or more lien claimants.[1] FNJ did not, however, have this suit dismissed.
Meanwhile, Ocean, believing that FNJ was obligated under the preferred ship mortgage to fund repair of the M/V Mr. Don upon receipt of the insurance proceeds, negotiated with FNJ for a new loan. FNJ issued a commitment letter, dated September 14, 1987 to Albert W. Gunther, Jr. (Gunther) and William Barnett (Barnett), or their assignees/nominees, to provide the funding for the repair of the M/V Mr. Don. The commitment letter provided in pertinent part:

TITLE OPINION: The Bank will require a title opinion in a standard form issued by a law firm acceptable to the Bank. The opinion shall be in the format of the loan stating that the Bank's mortgage is a first and valid lien and that the property is free of all liens, easements, restrictions or other encumbrances of any kind whatsoever, with only such exceptions in the coverage that are acceptable to the Bank.

OTHER TERMS & CONDITIONS:
1) The above terms and conditions and commitment to fund the new loan of one million forty thousand dollars ($1,040,000.00) is predicated upon the payment to FNJ of an amount satisfactory to FNJ by Lloyds of London or Gulf Coast Marine, Inc. or its designate, in connection with the existing term loan to Ocean Energy, Inc.
Gunther alleges that, pursuant to the agreements which led to the commitment letter, he voluntarily agreed to FNJ's foreclosure on several pieces of his personal property, as well as several pieces of equipment *509 owned by Gunther-related entities, and allowed FNJ to collect all of the accounts receivable owed Ocean.[2]
However, on August 1, 1988, FNJ notified Gunther and Barnett in writing that it would not honor the earlier commitment letter unless various conditions of that commitment were met by August 10, 1988. Gunther and Barnett did not communicate with FNJ prior to August 10, 1988.
On August 8, 1988 the United States Coast Guard issued its report on the investigation of the capsizing of the M/V Mr. Don. Contrary to what all parties had earlier believed, that the capsizing was due to adverse weather conditions, the Coast Guard report found that "the proximate cause of the casualty was that the vessel's recommended design parameters were exceeded." In other words, the vessel was overloaded. Based on this report, Lloyds felt that the insurance proceeds had been erroneously paid to FNJ.
On December 2, 1988, Lloyds filed a reconventional demand against FNJ for return of the paid insurance proceeds, attorney's fees, costs and interest in the earlier suit filed by FNJ to recover insurance proceeds, which had not been dismissed. On June 22, 1989, FNJ notified Ocean that it would not provide the funds to repair the M/V Mr. Don. Then on July 25, 1989, Ocean filed a separate suit against FNJ for specific performance and or damages for FNJ's refusal to fund the repair of the M/V Mr. Don, case No. 384-802 (the Loan Litigation) of the 24th Judicial District Court. Subsequent pleadings filed in the Loan Litigation added Gunther, Barnett and Power Well, as additional plaintiffs, and Lloyds, as an additional defendant.
On April 19, 1991 Ocean and Power Well filed an intervention in the Insurance Litigation asserting various claims for damages against Lloyds. These two cases, the Loan Litigation and the Insurance Litigation, were consolidated in the trial court on November 5, 1991 (the Lawsuits). Each of the parties has filed additional pleadings in the Lawsuits.
On January 2, 1992 FNJ filed a reconventional demand against Ocean and Gunther, claiming funds owed on the ship mortgages in the event Lloyds was successful in getting a return of the insurance proceeds that it had paid FNJ, which had been applied to the mortgage debts. On January 23, 1992, FNJ filed a third-party demand against John H. Powers (Powers) as a guarantor on the notes supporting the ship mortgages.
On March 13, 1992, over the protest of the other parties, FNJ and Lloyds reached a compromise and settled their differences. Lloyds agreed to dismiss its claim for all of the insurance proceeds and FNJ agreed to return $500,000.00 of the previously paid funds (the Settlement). FNJ thereafter filed amended reconventional demands against Ocean and Gunther and an amended third party demand against Powers for reimbursement of the $500,000.00 that it had returned to Lloyds. Ocean, Power Well, Gunther and Barnett thereafter filed a Fourth Supplemental and Amending Petition alleging, among other things, that FNJ had breached the Release Agreement and that Gunther and Powers were third-party beneficiaries of that agreement and, therefore, are entitled to enforce all rights contained therein. On April 20, 1992, the trial court signed an order as a result of a joint motion by FNJ and Lloyds, dismissing all their respective claims, counter claims and reconventional demands against each other.

THE LAW SUITS

Case No. 354-478
On November 23, 1987 FNJ as the loss payee, filed suit against Lloyds to recover the insurance proceeds.
On January 14-15, 1988 the Release Agreement was signed by Ocean, Power Well, FNJ and Lloyds.
On January 14-15, 1988 Lloyds paid the insurance proceeds to FNJ.
On December 2, 1988 Lloyds filed a reconventional demand against FNJ to recover the *510 insurance proceeds which it had paid to FNJ, alleging that the funds had been obtained through fraud, error and/or mistake (that Ocean and Power Well had lied in certain particulars regarding the cause of the sinking).
On April 19, 1991 Ocean and Power Well intervened against Lloyds alleging three "causes of action":
(1) A breach of the insurance Policy, a violation of La.R.S. 22:658, requesting penalties, attorneys' fees;
(2) A breach of the Release Agreement (1/14-15/88); and
(3) A violation of La.R.S. 22:658, non-payment within 60 days of proof of loss and no un conditional tender.
In a second amended petition in intervention, Ocean and Power Well alleged a fourth "cause of action":
(4) A violation of La.R.S. 22:1220, Lloyds did not pay timely, nor escrow for the liens as they had promised, it was not an un conditional tender and they settled with FNJ for a return of $500,000.00 in violation of the hull policy and release agreement;
(5) they sought consequential damages.
On April 20, 1992 all claims by and between FNJ and Lloyds were dismissed by joint motion and order, based on their settlement.

Case No. 384-802
On July 25, 1989 Ocean filed suit against FNJ asserting four "causes of action":
(1) the specific performance of FNJ under the preferred ship mortgage to fund repair of the M/V Mr. Don;
(2) ordering FNJ to cancel the preferred ship mortgages;
(3) the specific performance under the commitment letter or damages; and
(4) damages for breach of fiduciary duty, for excessive delays and for not acting in good faith.
A second amended petition added Power Well as a plaintiff and Lloyds as a defendant. It also asserted four more "causes of action":
(5) a breach of the Release Agreement against Lloyds (1/14-15/88);
(6) a violation of La.R.S. 22:658;
(7) Defamation; and
(8) the tortious interference with contract (for Lloyds failure to unconditionally pay all insurance proceeds interfered with Ocean, Gunther and Barnett's repair contract and loan commitment with FNJ.
A third amended petition added Gunther and Barnett as plaintiffs.
Finally, a fourth amended petition was filed, embellishing "cause of action no. 5" and adding two more "causes of action":
(9) a violation of La.R.S. 22:1220; and
(10) a breach of the Release Agreement against FNJ for returning $500,000.00 to Lloyds.
FNJ filed a reconventional demand against Ocean and Gunther, ultimately seeking reimbursement of the $500,000 they returned to Lloyds. FNJ filed a third party demand against Powers, asserting the same claim (Ocean was liable on the note and preferred ship mortgage and Gunther and Powers had signed personally as guarantors).
Powers cross-claimed against Lloyds, asserting that he was a third party beneficiary to the Release Agreement and that Lloyds had breached the agreement. He also contended that Lloyds failed to pay timely, wrongfully sought return of the insurance proceeds it had paid, and made an un conditional tender. He sought specific performance and damages under La.R.S. 22:658 and La.R.S. 22:1220, for failure to escrow.
On April 20, 1992 all claims by FNJ and Lloyds against each other were dismissed by joint motion and order, based on their settlement.

JUDGMENTS
Three judgments were rendered in these cases which are before this court on appeal, two on September 17, 1992 and one on January 27, 1993. The judgments grant the following eight partial exceptions of no cause of action or motions for partial summary judgment:
*511 Judgment dated September 17, 1992 (hearing of May 27, 1992)
Lloyds' motion for partial summary judgment to dismiss interference with contract claims by Ocean and Power Well;
Lloyds' motion to dismiss claims under La.R.S. 22: 658;
Judgement dated September 17, 1992 (hearing of September 3, 1992)
FNJ's exception of no cause of action and motion for summary judgment in case No. 384-802 with respect to plaintiffs' claims for breach of fiduciary and quasi-fiduciary duties contained in plaintiff's fourth cause of action;
FNJ's motion for summary judgment in case No. 384-802, only with respect to plaintiffs' claims for specific performance;
Lloyds' exception of no cause of action and motion for partial summary judgment to dismiss Ocean's claims under the hull insurance policy that Lloyd's failed to make unconditional tender;
Judgment dated January 27, 1993 (hearing of January 20, 1993)
Exceptions of no right of action, No Cause of Action and motion for partial summary judgment to dismiss all claims of Powers, Gunther, and Barnett filed by Lloyds;
FNJ's peremptory exceptions of no right and cause of action as to plaintiffs' claims in their fourth supplemental and amending petition in civil action No. 384-802 (breach of the Release Agreement);
Peremptory exception of no cause of action and motion for partial summary judgment dismissing claims for violation of La.R.S. 22:1220 filed by Lloyds.[3]
Lloyds also filed a motion for appeal, contesting several exceptions and motions that were denied, and leaving certain issues unresolved:[4]
Lloyds' motion for partial summary judgment on the issue of coverage was denied on September 17, 1992;
Lloyds' exception of no cause of action or, alternatively, motion for partial summary judgment on defamation claims was denied September 17, 1992;
Lloyds' exception of no cause of action or, alternatively, motion for partial summary judgment dismissing intervenor, Ocean claims for consequential damages was denied on September 17, 1992;
Lloyds' motion for partial summary judgment to dismiss Ocean's claims for breach of Settlement Agreement was denied on September 17, 1992;
Lloyds' exception of no cause of action to dismiss Ocean's claims for breach of Settlement Agreement was denied on September 17, 1992; and
Lloyds' exception of no cause of action or alternatively, motion for partial summary judgment on defamation claims was denied on September 17, 1992.
Accordingly, there are numerous issues before this court on appeal, and there are numerous issues remaining in the district court to be tried. The three judgments rendered in the district court did not totally dismiss any party from this litigation. Rather, the judgments, through the granting of exceptions of no cause of action and/or motions for summary judgment merely ruled out some of plaintiffs' theories of recovery without granting any party all or part of the relief sought.
Appellants cite and rely on the recent Louisiana Supreme Court case, Everything on Wheels Subaru, Inc. v. Subaru South, Inc., et *512 al., 616 So.2d 1234 (La.1993) (No. 91-C-2708). In our view, appellants reliance on this case is well placed.
In Subaru, the issue presented was whether a court may render a judgment which partially maintains an exception of no cause of action when the judgment adjudicates one or more, but less than all, of the demands or causes of action asserted against the excepting party. Therein, the Court held that where a petition asserts several demands or theories of recovery based on a single cause of action, arising out of one transaction or occurrence, the court should overrule an exception of no cause of action as to one demand or theory of recovery when the petition states a cause of action as to any demand or theory of recovery. In the alternative, the Court held that, if the petition is based on several separate and distinct causes of action arising out of separate and distinct transactions or occurrences, it could maintain the exception in part, but the partial judgment rendered by the court is not a partial final judgment which is appealable. The Court further noted that the question of partial summary judgments was not before it, but that it saw no reason why they should be treated any differently than the partial exceptions of no cause of action.
In the case of partial summary judgments, it has been held that partial summary judgments, unless specifically authorized by the Code of Civil Procedure, must grant at least part of the relief prayed for by one of the parties; it cannot merely strike down a theory of the case. Partial summary judgments which are not specifically authorized and do not grant all or part of the relief prayed for are not permitted. Gibson v. Gibson, 592 So.2d 855 (La.App. 3rd Cir.1991); Ward v. Tenneco Oil Company, 564 So.2d 814 (La.App. 3rd Cir.1990); Pizzolato v. Field, 441 So.2d 1248 (La.App. 1st Cir.1983).
The reasoning in Subaru, as to partial exceptions of no cause of action, like the reasoning in the cases concerning motions for partial summary judgment, derives from the Court's concern for the uneconomical use of judicial time. The Court explained in Subaru that the purpose of their decision was to promote and foster judicial efficiency, thereby preventing a multiplicity of appeals which forces an appellate court to consider the merits of the action in a piecemeal fashion. Thus, rather than having appeals from partial judgments, the preferred procedure would be for the trial court to conduct the trial, accept whatever evidence was necessary by proffer (if ruled out on an exception) and then have the entire case on appeal at one time, with a complete record for appellate review and decision.
The need for this rationale is clear in the instant case. Here we have multiple parties, both plaintiffs and defendants, with reconventional demands, cross-claims and counter claims, but all arising from the same basic operative facts. Eleven exceptions of no cause of action and/or motions for summary judgment were granted, fragmenting the case almost beyond the ability to determine which issues were resolved and which issues remain in the case for trial. For example, several exceptions or motions were granted against "plaintiffs", without regard to which plaintiffs were effected and another was granted "as to Plaintiffs' Claims in their Fourth Supplemental and Amending Petition", without specifying which part of said petition. Furthermore, the interrelated issues all evolve from the same set of facts, with no party being dismissed by the judgments.
The M/V Mr. Don, owned by Ocean, insured by Lloyds and mortgaged to FNJ, capsized and was declared a total loss. FNJ issued a commitment letter to fund repair of the vessel upon receipt of the policy proceeds. Lloyds paid the policy proceeds to FNJ. Lloyds determined that it had paid the proceeds by mistake, error or fraud and sought its return. FNJ then, over Ocean's protest, returned $500,000 of the $3.5 million that had been paid and sought reimbursement from Ocean and the guarantors on the Ocean note. All demands arise from the return of a portion of the insurance proceeds and the question of who should bear this loss.
Accordingly, as directed by Subaru, we hold that partial exceptions of no cause of action and/or partial summary judgments that only attack different theories of recovery, *513 based on the same set of operative facts, without dismissing a party or granting all or part of the relief sought, should not be granted. Also, partial exceptions of no cause of action that attack separate and distinct causes of action in the same case, which are granted, that do not dismiss the parties to the action, are not appealable judgments.
Therefore, the partial exceptions of no cause of action and/or the motions for partial summary judgment, which were granted in the district court, are set aside, and the case is remanded to the district court for further proceedings in accordance with Everything on Wheels Subaru v. Subaru, supra, and the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] Ocean contends that the money was withheld and was to be escrowed to satisfy any maritime liens filed against the M/V Mr. Don. Lloyds, on the other hand, contends that the money was withheld to pay the claim of a catering company, SHRM.
[2] Albert W. Gunther, Jr. was the director and Vice President of Ocean. His father, Albert W. Gunther, Sr. was the Chairman of the Board and President of the company. Gunther, Jr. also owned 50% of the stock in Power Well corporation. John Powers owned 40% of the stock in Power Well and Tommy Alfonso owned the remaining 10%.
[3] Three other exceptions and/or motions were granted which were not appealed:

Lloyds' motion for partial summary judgment to dismiss breach of insurance policy claims by Power Well;
Lloyds' exception of no cause of action or, alternatively, motion for partial summary judgment dismissing intervenor Power Well's claims for consequential damages; and
FNJ's exception of no cause of action in case no. 384-802 with respect to plaintiffs' claims that FNJ delayed in honoring contractual obligations and for FNJ's tortious breach of the implied covenant of good faith and fair dealing, both of which are contained in plaintiffs' fourth cause of action.
[4] A judgment denying an exception of no cause of action on motion for summary judgment is not appealable, and these issues have not been brief or argued. Accordingly, they are not considered herein.