637 So.2d 1130 (1994)
Joseph WILLIAMS
v.
The CITY OF NEW ORLEANS, et al.
No. 93-CA-2043.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1994.
*1131 Steven J. Lane, Herman, Herman, Katz & Colar, New Orleans, for appellee.
Angelique A. Reed, Asst. City Atty., Marie Bookman, Deputy City Atty., Kathy Lee Torregano, City Atty., New Orleans, for appellants.
Before SCHOTT, C.J., and BYRNES and CIACCIO, JJ.
BYRNES, Judge.
On May 9, 1989 plaintiff, Joseph Williams sued the City of New Orleans, Jack Eckerd Corporation d/b/a Eckerd Drugs, Eckerd's insurer, J.E.C. Funding, Inc., the owner of the premises in which Eckerd's operated a drugstore, and J.E.C. Funding, Inc.'s insurer, Travelers Insurance Company, for damages as a result of injuries he allegedly sustained on June 16, 1988, when he fell in a hole in the public sidewalk in front of the Eckerd's drugstore.
On October 9, 1991, judgment on an exception of no cause of action was rendered in favor of Jack Eckerd Corporation, J.E.C. Funding, Inc., and the Travelers Insurance Company releasing them from the suit because they neither owned nor leased the sidewalk where plaintiff was injured. The judgment allowed the plaintiff twenty days to amend his petition to state a cause of action. On October 30, 1991, over three years after the alleged accident, plaintiff filed a "Third Supplemental and Amended Petition for Damages" alleging for the first time that he also fell in a hole in Eckerd's driveway immediately prior to the fall which was the subject of his original petition. On January 22, 1992, the trial court dismissed the claim asserted by the plaintiff in his "Third Supplemental and Amended Petition for Damages" on an exception of prescription.
None of the procedural steps catalogued up to this point are the subject of this appeal.
On July 23, 1992, the trial court rendered a "partial summary judgment" against the City of New Orleans on the issue of "liability."
On July 24, 1992, the City issued a "Notice of Intention to Apply for Writs of Certiorari" in an effort to have the "partial summary judgment" reversed.
On July 27, 1992, the trial court signed the City's "Motion To Fix Time For Filing Application For Supervisory Writs."
On October 19, 1992, this Court denied the City's writ declaring that the City "... has an adequate remedy on appeal."
The parties then proceeded to a trial on the merits. On June 17, 1993, judgment was rendered in favor of the plaintiff and against the City, condemning the City to pay $237,200 consisting of $85,000 for pain and suffering and mental anguish, $1,200 for past medical expenses, $75,000 for loss of enjoyment of life, $72,000 for loss of future earning capacity, and $4,000 for future medical expenses.
The City filed this appeal from both the judgment rendered at the trial on the merits and the previously rendered partial summary judgment. On December 28, 1993, plaintiff filed a "Motion to Dismiss the Defendant's Appeal of the Trial Court's Summary Judgment" contending that the summary judgment was a final judgment which the City failed to appeal in a timely manner.
On February 1, 1994, this Court ruled that the summary judgment was not a final appealable judgment and denied the plaintiff's motion to dismiss.
This is a claim for personal injury damages. The partial summary judgment of the trial court purported to determine liability but did not fix quantum. A partial summary judgment must grant some of the relief prayed for by a party. Smith v. Hanover Ins. Co., 363 So.2d 719 (La.App. 2 Cir.1978). The City argues that the partial summary judgment was invalid because it failed to grant some of the relief prayed for by the plaintiff when it awarded him no money damages. Smith v. Hanover Ins. Co., supra. Contrary to the City's reading of Smith v. Hanover Ins. Co., a summary judgment may be rendered on the issue of liability alone although a genuine issue as to the amount of the damages remains to be decided at a trial on the merits. LSA-C.C.P. art. 966(C).
*1132 The City also argues that the partial summary judgment of the trial court did not really determine the issue of liability because it was not dispositive of the plaintiff's comparative fault. It is the opinion of this Court that a determination of tort liability for purposes of granting a partial judgment includes the requirement of a determination of comparative fault, i.e., on any particular claim the question of liability must be completely resolved between the parties for and against whom the partial summary judgment is rendered. This may not be the case where different claims between the parties may be involved such as the case where one party sues on a promissory note and the other reconvenes for damages. In such a case it might be permissible to render a partial summary judgment on the note, but defer the question of damages to a trial on the merits or vice versa as long as the partial judgment disposed of the complete question of liability on either particular claim. Katz v. Brian Investments, Ltd., 542 So.2d 48 (La.App. 4 Cir.1989), writ denied 548 So.2d 1231 (La. 1989). To put it another way, a partial summary judgment may not be granted for purposes of determining a particular element of liability such as notice to one party or the fault of one party where such a determination is not completely dispositive of the question of liability between the parties concerning that claim and where other issues such as comparative fault remain unresolved.
The transcript of the reasoning of the trial court in the proceedings on the motion for summary judgment reveals that the trial court was attempting to render judgment only on the issue of notice to the City, which is not the same as a judgment on liability:
"The court ... feels that ... the City had at least constructive notice of the holes on Freret Street, that it also had actual notice.
* * * * * *
Now, I'm not saying he [the plaintiff] is not comparatively negligent and I'm not saying how much money the gentlemen is going to get. I'm simply saying the court finds liability upon the City and can do it in a Motion for Summary Judgment."
The pleadings and memoranda of the parties in the trial court also show that notice to the City was the only element of liability before the court on the motion for summary judgment.
Unless specifically authorized by the Code of Civil Procedure, partial final judgments which do not grant all or part of the relief prayed for are not permitted, since to do so would promote piecemeal litigation and the uneconomical use of judicial time thereby frustrating the prompt resolution of issues. Caire v. Fremen, 630 So.2d 297 (La.App. 5 Cir.1993); First Na. Bank v. Lloyd's Underwriters, 629 So.2d 507 (La.App. 5 Cir.1993); Hawkins v. Cox, 592 So.2d 852, 855 (La.App. 3 Cir.1991). It was in an effort to avoid just such piecemeal litigation that this court denied the City's application for supervisory writs in an attempt to have the partial summary judgment overturned. When this Court denied that application declaring that the City had "an adequate remedy on appeal", it was with the expectation that this Court could dispose of the case more efficiently by waiting to review it in its entirely on appeal. That language was not intended to mean that this Court felt that the partial summary judgment was a final judgment reviewable only by an immediate appeal.
With the benefit of 20/20 hindsight, it now appears that the desire of this Court to avoid piecemeal litigation and promote judicial economy when we denied the City's writ application had the unintended consequence of doing the opposite. In retrospect, the better course of action would have been to adopt the approach recommended by Mark Tatum in "Revisiting the Supervisory Powers of the Louisiana Courts of Appeal", 41 La. Bar Journal, No. 5, 433, 436 and grant the writ. Mr. Tatum's article emphasized the following language from Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981):
If appellate courts have appellate jurisdiction over interlocutory judgments which cause irreparable injury, then the courts' supervisory jurisdiction logically extends to interlocutory judgments that do not cause irreparable injury.
*1133 Mr. Tatum's scholarly analysis encourages the exercise of supervisory powers where it would terminate the litigation or substantially promote judicial efficiency and fairness to the litigants. This Court now realizes that had it granted the City's application for writs it would have substantially promoted judicial efficiency and fairness to the litigants.
The plaintiff argues that it is too late for this Court to review the partial summary judgment because it was an appealable final judgment and the appeal time has run. But as this Court pointed out when it recently denied plaintiff's motion to dismiss the City's appeal, the partial summary judgment was not a true final judgment. This was a partial judgment which was improperly rendered as opposed to one that was improperly decided.
This case represents a compelling argument for exercising supervisory powers of this Court liberally when a writ application asks us to review the granting of a partial motion of summary judgment. When such a motion for partial summary judgment is denied erroneously it normally means only that one more issue must be tried on the merits in the course of a trial that would take place anyway. But where the partial summary judgment is improperly rendered the potential imposition on the resources of the courts and the litigants is far greater as the courts and litigants may have to go through a second trial that could have been avoided had the improper partial judgment been reversed immediately.
As Mr. Tatum pointed out: "... nothing would prevent a court from converting an appeal of an improper final judgment to a writ application, or from expediting the appeal. Such a judgment is final and appealable only in the sense that a trial court has mistakenly rendered it in the form of a final judgment."[1] (Emphasis added). 41 La. Bar Journal, No. 5, at 438.
We find that the error of the trial court in improperly granting the partial summary judgment was so material and the adverse impact upon the City's case was so prejudicial, that it was impossible thereafter for the City to obtain a fair trial.[2]
Because the partial summary judgment deprives us of an adequate record upon which we could render a judgment on the merits we have no recourse but to remand this matter for a new trial.
For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
SCHOTT, J., concurs in the result.
NOTES
[1] Had the partial summary judgment been properly rendered the City's notice of intention to apply for writs should be treated as the equivalent of a motion for an order of appeal, and the trial judge's order fixing the time in which to apply for writs should be considered as an order granting the appeal. Shows v. Shows, 434 So.2d 1090 (La.1983).
[2] This premature judgment of "liability" seems to have influenced the trial court's view of the balance of the City's case. The trial court seems to have discounted serious credibility problems in plaintiff's case including discrepancies between plaintiff's deposition testimony and his testimony at trial. This negative view of the case also seems to have carried over into the trial court's quantum decision. It is otherwise impossible to explain an award for loss of earnings potential as an artist where the 58 year old plaintiff has never sold a painting and where his only source of income for the last fifteen or so years has been Social Security disability payments. 42 U.S.C.A. Sec. 416(i) defines disability as the "... inability to engage in any substantial gainful activity [emphasis added] by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C.A. Sec. 421(i) requires that cases of continuing disability be reviewed to determine continued eligibility.

As a matter of law, plaintiff could only apply for and continue to qualify for such benefits by alleging on an ongoing basis his "inability to engage in any substantial gainful activity" which would include work as a commercial artist. Per force, if plaintiff were unable to engage in any substantial gainful activity he could suffer no loss of earnings potential as a result of his injury.