# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-495

## JOHN THIBODEAUX AND AMY THIBODEAUX, INDIVIDUALLY AND ON BEHALF OF EMILY THIBODEAUX AND GABRIELLE THIBODEAUX

## VERSUS

## GULFGATE CONSTRUCTION, LLC, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-4167
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Melvin A. Eiden**
**Rabalais & Hebert**
**701 Robley Drive, Suite 210**
**Lafayette, Louisiana 70503**
**(337) 981-0309**
**Counsel for Defendant/Appellant:**
    **J. M. Drilling LLC**

**Max J. Cohen**
**Melanie Lockett**
**Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana  70139-3600**
**(504) 581-2450**
**Counsel for Defendant/Appellee:**
**Water & Wastewater Utilities, Inc.**

**Janice M. Reeves**
**Maricle & Associates**
**III United Plaza, Suite 350**
**8545 United Plaza Boulevard**
**Baton Rouge, Louisiana  70809**
**(225) 924-9585**
**Counsel for Defendant/Appellee:**
**Gulfgate Construction, LLC**

**Max Michael Menard**
**Attorney at Law**
**200 Church Street**
**Post Office Box 1196**
**Youngsville, Louisiana 70592**
**(337) 857-6123**
**Counsel for Plaintiffs/Appellees:**
**John Thibodeaux**
**Amy Thibodeaux**
**Gabrielle Thibodeaux**
**Emily Thibodeaux**

**Edward Taulbee**
**Attorney at Law**
**Post Office Box 2038**
**Lafayette, Louisiana 70502-2038**
**(337) 269-5005**
**Counsel for Plaintiffs/Appellees:**
**John Thibodeaux**
**Amy Thibodeaux**
**Gabrielle Thibodeaux**
**Emily Thibodeaux**

**Pierre M. Legrand**
**Marshall G. Weaver**
**Legrand Law Firm**
**3939 North Causeway Boulevard, Suite 204**
**Metairie, Louisiana 70002**
**(504) 304-9499**
**Counsel for Intervenor/Appellee:**
**Bellsouth Telecommunications, LLC**

**KEATY, Judge.**

Defendant/Appellant, J. M. Drilling LLC (J. M. Drilling), appeals the trial court's granting of a motion for summary judgment in favor of Defendant/Appellee, Gulfgate Construction, LLC (Gulfgate Construction). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

This negligence matter arose on June 9, 2015, when Plaintiff, John Thibodeaux, injured his right leg while splicing fiber optic cable on behalf of his employer, American Telephone & Telegraph (AT&T), at 114 Meadow Gate Drive in the Sawgrass subdivision in Lafayette, Louisiana. Thibodeaux had to access hand holes, which are rectangular, underground vaults where fiber optic cables come together and are spliced. The two hand holes at issue were equipped with covers, i.e., lids, which rested on top of the ground. They were located near a rectangular, pre-cast slab which held an AT&T cabinet. On the day of his accident, Thibodeaux lifted a hand hole cover and placed it by the AT&T cabinet when the ground beneath him gave way, causing his right leg to fall into a hole, sustaining injury.

Prior to Thibodeaux's accident, Gulfgate Construction and J. M. Drilling performed work on the property pursuant to separate contracts with AT&T. Gulfgate Construction's job, which was the F1 part of the project, consisted of preparing a pre-cast slab, installing a cabinet on top of the pre-cast slab, digging two hand holes, and feeding fiber optic cable into hand hole number two. After Gulfgate Construction finished its job, J. M. Drilling performed the F2 part of the project, which consisted of installing fiber optic lines by accessing the hand holes and feeding the cable out to the rest of the subdivision.

It is alleged that during operations on the property, Gulfgate Construction and/or J. M. Drilling struck and damaged an underground sewer force main line. The main line purportedly began leaking and caused a washout under the pre-cast slab upon which the AT&T cabinet was situated, ultimately forming the hole into which Thibodeaux fell. The main line, which ran from a sewer lift station on the property to the street, belonged to Water & Wastewater Utilities, Inc. (Wastewater), the owner and operator of the lift station. Gulfgate Construction repaired Wastewater's broken main line after Thibodeaux's accident. Wastewater had not marked its main line prior to the commencement of work performed by Gulfgate Construction and J. M. Drilling. The hand holes had to be repositioned as a result of the existence of the underground main line.

On August 24, 2015, Thibodeaux and his wife, Amy, individually and on behalf of their minor daughters, Gabrielle and Emily, filed suit against Gulfgate Construction, Milton Water System, Inc., and Wastewater. Wastewater is the subject of a separate appeal in this court in Docket Number 17-494. Milton Water System, which has been dismissed, is not the subject of either appeal. On October 8, 2015, Thibodeaux amended his lawsuit, adding J. M. Drilling as a defendant.

On December 20, 2016, Gulfgate Construction filed a Motion for Summary Judgment. It was granted for reasons cited in open court by the trial court following a hearing that occurred on January 30, 2017. On that same day, the trial court signed a written judgment dismissing Gulfgate Construction from the matter based upon its finding that "there is no genuine issue of material fact that [Gulfgate Construction] is not liable for the damages sued upon." J. M. Drilling appealed.

On appeal, J. M. Drilling alleges the following assignments of error:

2

1. The trial court erred in granting Gulfgate's Motion for Summary Judgment as it should have left for the jury to decide whether the placement of the hand hole too close to the [AT&T] cabinet was a concurrent, comparative fault, causal factor to the injury suffered by Thibodeaux.

2. The trial court erred in granting Gulfgate's Motion for Summary Judgment since questions of negligence and comparative fault are generally inappropriate for disposition by summary judgment.

We further note that Plaintiffs/Appellees, the Thibodeauxs, filed an appellate brief adopting all of the facts, law, and arguments asserted by J. M. Drilling. Intervenor/Appellee, Bellsouth Telecommunications, LLC, also filed an appellate brief adopting all of the facts, law, and arguments asserted by the Thibodeauxs and J. M. Drilling.

## STANDARD OF REVIEW

"Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Greemon v. City of Bossier City*, 10-2828, 11-39, p. 6 (La. 7/1/11), 65 So.3d 1263, 1267. A summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the matter at issue, however, his burden on the motion for summary judgment "does not require him to negate all essential elements of the

3

adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Specifically, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

## DISCUSSION

### I. First Assignment of Error:

In its first assignment of error, J. M. Drilling contends the trial court erred in granting Gulfgate Construction's Motion for Summary Judgment as it should have been left for the jury to decide whether the placement of the hand hole too close to the cabinet was a concurrent, comparative fault, causal factor to the injury suffered by Thibodeaux.

In opposition, Gulfgate Construction contends J. M. Drilling failed to prove that Gulfgate Construction's actions were a cause-in-fact of Thibodeaux's injuries. It asserts that J. M. Drilling only argued hypothetical arguments.

"Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case." *Cormier v. Albear*, 99-1206, p. 6 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. Under this analysis, a plaintiff is required to prove five separate elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-366, pp. 8-9 (La. 12/6/11), 79 So.3d 293, 299 (citing *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 01-2217, p. 6 (La. 4/3/02),

4

816 So.2d 270, 275-76). "The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Energy Corp*., 06-477, p. 21 (La. 12/18/06), 944 So.2d 564, 579. "Whether the defendant breached that duty and whether that breach was a cause in fact of plaintiff's injuries are factual questions to be determined by the factfinder." *Id*. at 580. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Id*. "[W]here there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable." *Id*.

In this case, our inquiry is whether the evidence supports a finding that Gulfgate Construction's actions were a cause-in-fact of Thibodeaux's injury. Thibodeaux's deposition testimony, which was offered into evidence at the hearing on the Motion for Summary Judgment, reveals that he had to access the inside of two hand hole boxes by sliding off the heavy covers. According to Thibodeaux's testimony, although he was able to slide the cover off of hand hole two, he had to lift the cover off of hand hole one because it was positioned too close to the cabinet. Thibodeaux explained that, as he lifted the cover to hand hole one, he fell into a hole which had formed under his right leg, sustaining his injury. Thibodeaux opined that hand hole one was improperly placed because it was within three feet of, rather than three feet away from, the AT&T cabinet.

The two hand holes were previously dug by Gulfgate Construction, according to the deposition testimony taken from its representative and construction supervisor, Kelly Vice. Vice testified that on January 20 and 21, 2015, John Smith, Gulfgate Construction's foreman, was excavating and digging hand

5

holes on the property when he discovered and unearthed an unmarked, two-inch, polyvinyl chloride (PVC) pipe. According to Vice, Gulfgate Construction was initially unaware that the pipe was actually the main line at issue in this matter. He explained that the discovery of the pipe prevented Gulfgate Construction from placing the hand holes in its original location in accordance with AT&T specifications. Vice testified that AT&T specifications provided that hand holes were to be placed twelve inches from the cabinet. Vice explained that after Smith called him and informed him of the pipe's discovery, he went to the property where he called AT&T's engineer, John Guidry. Vice noted that after he explained the issue to Guidry, he obtained an oral variance from Guidry, instructing him to find a good spot to place the hand holes. Vice testified that he subsequently moved one of the hand holes closer to, and less than twelve inches from, the pre-cast slab which housed the AT&T box. Vice agreed that moving the hand hole closer to the pre-cast slab made it harder to slide open the cover. Vice indicated that he moved another hand hole closer to the street. Vice testified that Gulfgate Construction performed additional work on the property around February 25 or 26, 2015, when another employee, Harold Broussard, discovered a broken piece of white, two-inch pipe lying on the ground.

Vice testified that after Thibodeaux's accident, Smith investigated and repaired the hole wherein Thibodeaux sustained injury. According to Vice, Smith's investigation revealed that the hole formed was the result of a washout, which occurred under the pre-cast slab upon which the cabinet was situated. Vice testified that a washout occurs when an underground leak causes the dirt to open up. He revealed that Smith also discovered a two-inch, PVC pipe had pulled out of its sleeve, resulting in an opening between the pipes underneath the pre-cast slab.

6

Vice testified that Smith repaired the broken, underground pipe by using an existing piece of a two-inch pipe that was lying above ground. This existing piece of two-inch pipe, according to Vice, was the same two-inch pipe that had been previously discovered by Broussard on February 25 or 26, 2015. Vice noted that Gulfgate Construction did not retrieve the discarded, broken, white pipe until after suit was filed. Vice testified that Gulfgate Construction did not install the original underground pipe, nor did he know who installed it. Vice further noted that he told one of its employees about the existence of the unmarked pipe so that caution could be used to prevent boring into it when working in that area.

Broussard's deposition testimony reveals that he was in charge of placing fiber optics into the right side of hand hole two. Broussard explained that prior to beginning the project, he conducted a pre-inspection of the property. Broussard explained that during his pre-inspection, he spoke to the main bid contractor, who was present on the property and had begun boring and excavating. Broussard noted that the contractor was boring blind[1] between AT&T equipment and the roadway in an area containing underground pipes. He explained that boring blind is dangerous because underground pipes can get "cut." Although Broussard was unable to remember the main bid contractor's name, he testified that Gulfgate Construction was not the main bid contractor. Broussard testified that when he returned two days later, the area where the main bid contractor had been boring was dug up and contained a big patch of dirt. Broussard revealed that the dirt patch was not disturbed during his pre-inspection two days earlier. He also noticed

---

[1] Boring blind is a term Broussard used to describe boring a hole in the ground without the aid of a boring pit. During this process, boring rigs bore down through the surface of the ground to open up a tunnel underneath in order to facilitate the placement of conduit for things as electrical service, sewers, or fiber optic cables.

a broken piece of a white, two-inch pipe located next to the dug-up dirt which he had not seen during his pre-inspection. Broussard further revealed that he had known of the existence of an underground, two-inch pipe even though it was not marked, because he had been warned by his boss "to be careful."

Smith, in his deposition testimony, also confirmed the discovery of the underground, two-inch pipe. Smith explained that he and Adam Romero, another Gulfgate Construction employee, were digging hand holes when they uncovered the pipe. Romero's deposition testimony supports Smith's deposition testimony and confirms that they called their supervisor, Vice, upon the discovery of the pipe. Smith testified that the discovery of the pipe caused him to place the hand holes a little wider apart to prevent hitting the pipe. He testified that hand hole one was moved closer to the pre-cast slab upon which the cabinet was situated. Smith noted that hand hole two was moved closer to the street. Smith agreed that placing a hand hole box at least twelve inches from the pre-cast slab can give a person room to slide the heavy hand hole cover away from the box. Smith indicated that regardless of whether the hand hole cover at issue was located twelve or six inches away, Thibodeaux would have been unable to slide the cover off because it measured thirty by sixty inches. Smith's testimony supports Vice's testimony with respect to the cause of the hole into which Thibodeaux fell. Smith noted that this newly formed hole was not the result of the two hand holes he previously dug because he had tamped down the earth along the sides of the two hand hole boxes.

Other deposition testimony submitted at the hearing indicates that contractors had latitude concerning where to put their utility lines in the easement. This is evident from the deposition testimony of Walter St. Jude Comeaux, III, of Comeaux Engineering & Consulting, who prepared the construction drawings for

8

the utility line on the property in question. In that regard, the following colloquy occurred:

Q All Right. Did your construction drawings show where the various utilities easements were to be specifically located on 114 Meadow Gate?

A No. We do show . . . generally speaking, where all the utilities are going to be placed. Uh, but it's a . . . typical detail and . . . it's just a drawing showing where everything is kind of, sort of, supposed to be.

Comeaux revealed the contract drawings do not designate specific areas for placement of utilities within the AT&T servitude easement. Comeaux stated: "[I]n the drawings there's a typical detail that shows essentially how they would like to see all the utilities placed within . . . the road right-of-way and the easements, but . . . that's kind of just a general guideline."

In this case, a construction drawing prepared for AT&T regarding the property was submitted into evidence at the hearing. It reveals that, as a general guideline, the two hand holes should be twelve inches from the cabinet. As Vice and Smith explained through their desposition testimonies, however, the two hand holes had to be moved in order to prevent hitting the underground pipe. Vice and Smith agreed that one hand hole was moved towards the pre-cast slab and the other hand hole was moved toward the street. All of the evidence and testimony in this matter, however, fails to indicate that the placement of the hand holes was a cause-in-fact of Thibodeaux's injury. Rather, it shows that Gulfgate Construction prepared its work in accordance with AT&T specifications. Its decision to move the hand holes resulted from the discovery of an underground, unmarked, two-inch white PVC pipe. The hand holes were repositioned pursuant to an oral variance obtained from AT&T's engineer. As the testimony indicated, contractors, such as

AT&T, have latitude in deciding where to place its lines within the easement. Although one of the hand holes may have been placed closer than the suggested twelve inches from the edge of the pre-cast slab, there is no evidence indicating that this was a cause-in-fact of Thibodeaux's injuries.

Moreover, there was no evidence presented at the hearing indicating that Gulfgate Construction broke the main line, which caused the leak, which caused the washout, which formed the hole into which Thibodeaux fell and was injured. The trial court, therefore, did not manifestly err in finding that Gulfgate Construction was not a cause-in-fact of Thibodeaux's injury. Accordingly, J. M. Drilling's first assignment of error is wihout merit.

## II.   Second Assignment of Error:

In its second assignment of error, J. M. Drilling contends the trial court erred in granting Gulfgate's Motion for Summary Judgment since questions of negligence and comparative fault are generally inappropriate for disposition by summary judgment. In support, it cites *Williams v. City of New Orleans*, 93-2043 (La.App. 4 Cir. 5/17/94), 637 So.2d 1130, *writ denied*, 94-1587 (La. 10/7/94), 644 So.2d 632, a case wherein the trial court rendered summary judgment against the City of New Orleans. There, the city argued that "the partial summary judgment of the trial court did not really determine the issue of liability because it was not dispositive of the plaintiff's comparative fault." *Id.* at 1132. In reversing the trial court, the Fourth Circuit held:

> It is the opinion of this Court that a determination of tort liability for purposes of granting a partial judgment includes the requirement of a determination of comparative fault, i.e., on any particular claim the question of liability must be completely resolved between the parties for and against whom the partial summary judgment is rendered. . . . To put it another way, a partial summary judgment may not be granted for purposes of determining a particular

10

element of liability such as notice to one party or the fault of one party where such a determination is not completely dispositive of the question of liability between the parties concerning that claim and where other issues such as comparative fault remain unresolved.

*Id.*

We find J. M. Drilling's reliance on *Williams*, 637 So.2d 1130, is misplaced. *Williams* addresses whether the fault of one party is appropriate to be determined on summary judgment. In this case, the trial court did not determine that J. M. Drilling was at fault. Rather, the trial court found that there lacked sufficient evidence to proceed against Gulfgate Construction under La.Code Civ.P. arts. 966 and 967.

Accordingly, J. M. Drilling's second assignment of error is without merit.

### DECREE

The trial court's judgment in favor of Defendant/Appellee, Gulfgate Construction, LLC, is affirmed. All costs of this appeal are assessed to Defendant/Appellant, J. M. Drilling LLC.

**AFFIRMED.**