Judge Terri F. Love
This appeal arises from a design build contract for the construction of a high pressure industrial pump for NASA. The mechanical subcontractor utilized an initial budget quote from the builder to assemble a bid for the NASA project. The final quote was over one million dollars above the initial quote. As a result, the mechanical subcontractor was required to expend extra monies to complete the project. The mechanical subcontractor then filed suit against the engineering company and the *308 builder based on detrimental reliance and negligence. The trial court granted a motion for summary judgment prior to the trial on the merits that dismissed all negligence claims against the engineering company. The trial court proceeded to conduct a three-day bench trial on the merits. Both the builder and mechanical subcontractor appealed. Finding that the trial court erroneously partially granted the engineering company's summary judgment, we reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Healtheon, Inc. ("Healtheon"), a general contractor, assembled a design-build team to create a bid on a NASA Stennis Space Center pump installation project. Healtheon contacted Alfred Conhagen, Inc. of Louisiana ("Conhagen") to provide the high pressure water pump system as the mechanical subcontractor. Conhagen then suggested that Waldemar S. Nelson and Company, Inc. ("Nelson") for design engineering services. Ruhrpumpen, Inc. ("Ruhrpumpen") provided Nelson with a quote on a pump package for the project. Conhagen relied upon Ruhrpumpen's quote of $734,480.00 to construct a proposed bid. However, Ruhrpumpen's final quote was $1,793,360.00.
As a result of the increase of over a million dollars, Conhagen contends that it had to seek other materials at the last minute, which cost a substantial amount of money. Thus, Conhagen filed a Petition for Damages against Ruhrpumpen and Nelson contending that they were negligent and caused Conhagen to rely to its detriment on the initial quote. Nelson filed a Motion for Summary Judgment asserting that no genuine issues of material fact existed because it was not negligent and did not cause Conhagen to detrimentally rely upon the initial quote. Ruhrpumpen also filed a similar Motion for Summary Judgment. The trial court denied all of the Motions for Summary Judgment except for Nelson's Motion for Summary Judgment regarding negligence. The trial court granted Nelson's Motion for Summary Judgment in part and dismissed all of Conhagen's negligence claims against Nelson with prejudice.[1]
The matter proceeded to trial. Following a three-day bench trial, the trial court issued a judgment finding Ruhrpumpen one hundred percent liable to Conhagen based on negligence and detrimental reliance. The trial court found that Nelson was not liable for damages resulting from alleged detrimental reliance. The trial court awarded Conhagen $927,560.30, plus interest and court costs from Ruhrpumpen.
Ruhrpumpen filed a suspensive appeal contending that the trial court: 1) committed manifest error by denying its motion for involuntary dismissal and holding it liable for negligence and detrimental reliance; 2) erred by not assigning fault to Conhagen and Nelson for their negligence; 3) erroneously denied the previous Motion for Summary Judgment; 4) erroneously granted Nelson's Motion for Summary Judgment in part; and 5) abused its discretion by admitting evidence of actions after Conhagen utilized Ruhrpumpen's initial quote in its quote to Healtheon. Conhagen also filed a devolutive appeal. Conhagen sought to protect its right to receive funds from Nelson should this Court find Nelson at fault.
*309 SUMMARY JUDGMENT
Ruhrpumpen contends that the trial court erroneously granted part of Nelson's Motion for Summary Judgment by finding that Nelson was not negligent prior to trial. We find this issue dispositive.
"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." Id. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
The burden of proof lies with the mover. La. C.C.P. art. 966(D)(1). "Nevertheless, if the mover will not bear the burden of proof at trial on the issue ... the mover's burden ... does not require him to negate all essential elements of the adverse party's claim." La. C.C.P. art. 966(D)(1). Rather, the mover must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). If the mover meets his burden, then "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).
"The standard of review of the granting of a summary judgment is de novo ." Bayer v. Starr Int'l Corp. , 17-0948, p. 3 (La. App. 4 Cir. 5/2/18), 246 So.3d 46, 49. We use "the same criteria that govern[s] the district court's consideration of whether summary judgment is appropriate." Jamison v. D'Amico , 06-0842, p. 2 (La. App. 4 Cir. 3/14/07), 955 So.2d 161, 163.
"A motion for a summary judgment is not to be used as a substitute for trial on the merits." Rapp v. City of New Orleans , 95-1638, p. 3 (La. App. 4 Cir. 9/18/96), 681 So.2d 433, 437. This is the case "even where it might appear to the court that the pleadings are frivolous and the party so pleading has little chance of success at trial." Walker v. Schwegmann Giant Supermarkets, Inc. , 95-1934, p. 8 (La. App. 4 Cir. 3/14/96), 671 So.2d 983, 988.
Negligence
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315(A). "The standard negligence analysis we employ in determining whether to impose liability under La. C.C. art. 2315 is the duty/risk analysis." Mathieu v. Imperial Toy Corp. , 94-0952, p. 4 (La. 11/30/94), 646 So.2d 318, 321. This analysis requires that the plaintiff prove the following:
(1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).
Id. , 94-0952, pp. 4-5, 646 So.2d at 322.
Nelson contends that the Motion for Summary Judgment should not be overruled because Conhagen failed to put forth evidence of the duty element, i.e., the *310 standard of care that Nelson allegedly breached. Nelson maintains that the duty element must be supported by expert testimony. We disagree.
The Louisiana Supreme Court stated that even in medical malpractice cases, expert testimony is not always required. Pfiffner v. Correa , 94-0924, p. 9 (La. 10/17/94), 643 So.2d 1228, 1234. Likewise, we held that when "the negligence complained of was so obvious that a layperson can infer negligence without the guidance of expert testimony, such as fracturing a leg during an examination, amputating the wrong limb, or leaving a sponge in a patient's body," expert testimony was not required. Miller v. Tulane Univ. Hosp. , 09-1740, pp. 5-6 (La. App. 4 Cir. 5/12/10), 38 So.3d 1142, 1145. See also Milton J. Womack, Inc. v. House of Representatives of State , 509 So.2d 62, 66 (La. App. 1st Cir. 1987). As with physicians in an action for medical malpractice, the same is also true for engineers who commit common sense infractions. Nicholson & Loup, Inc. v. Carl E. Woodward, Inc. , 596 So.2d 374, 381 (La. App. 4th Cir. 1992).
In the present matter, Ruhrpumpen contends that Nelson was negligent in its communications or lack thereof between Ruhrpumpen and Conhagen. While Nelson employs engineers, we do not find that these allegations of simple negligence require expert testimony to establish a standard of care. A layperson, or as in this case, the trial court judge is well-equipped to gauge the evidence and determine whether Nelson fell below a common sense standard of care.
In regards to a breach of that common sense standard, Ruhrpumpen has demonstrated that genuine issues of material fact remain regarding Nelson's alleged negligence. Conhagen's representative, Eric Heidingsfelder, stated that design was Nelson's responsibility; it was also Nelson's responsibility to ensure that the plans met NASA requirements. Mr. Heidingsfelder testified that "Waldemar Nelson provided me a quote from Ruhrpumpen. So I'm assuming that they would have vetted that quote. Nelson fully knew that I would be using that quote to develop my proposal." Mr. Heidingsfelder also stated: "I expected Ruhrpumpen to sell me the products as designed and specified by Nelson, and I relied on Nelson to make sure that the pricing that Ruhrpumpen provided me was well [sic] as the equipment was to meet specs." Mr. Heidingsfelder testified that he was unable to "solicit pricing as [he] did not know what had to be built other than some generic specifications." He stated that Nelson requested the price. As to expectations, Mr. Heidingsfelder stated that "[i]t was the expectation of Nelson to provide us with and solicit vendors that could meet the performance specification and provide that to us, and when I say us I mean Healtheon and myself, as the contractors, to use in our proposal."
Debra Ingram, from Ruhrpumpen, testified that she knew Nelson would use the "price as a starting point as he [was] designing the job." Ms. Ingram stated that she informed Nelson that the price would increase, but that she did not know to what extent.
Bill Berg, from Nelson, testified that his "goal was to help write the proposal ... to figure out preliminary design stuff." However, he stated that Nelson's role "might have turned in to supporting price information." In regards to the initial budget quote from Ruhrpumpen, Mr. Berg stated that "[y]ou know, it was just a wild a** guess based on smaller pumps." Wayne Hingle, also from Nelson, testified that Ms. Ingram, from Ruhrpumpen, informed him that prices could change by the time the purchase was made. He further *311 stated that she indicated she did not have firm quotes from buy out vendors, so Ruhrpumpen would prefer not to provide a cost breakdown. Mr. Hingle stated that Nelson would have told Conhagen if something in the quote looked strange. Also in regards to Nelson's role, he testified that "I think the role of trying to find that particular pump may have evolved into getting price quotes."
Rajan Chadha, of Healtheon, testified that he could not recall whether he knew that Ruhrpumpen informed Nelson that it did not have firm buy out prices and that the prices from the initial quote could change.
We found that Nelson's alleged standard of care to Conhagen could be determined without expert testimony. The evidence discussed above, which was attached to the Motion for Summary Judgment and Opposition, presented juxtaposed testimony regarding Nelson's role as to Ruhrpumpen and Conhagen. Further, the testimony suggests that Ruhrpumpen informed Nelson that a price increase would occur, but that Nelson did not inform Conhagen. Additionally, Mr. Berg's testimony regarding the "wild" nature of the initial quote could connote that he knew the price would change. This evidence requires credibility determinations, which are unsuited on a motion for summary judgment. See M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't , 15-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320. Also, whether this behavior rises to the level of negligence is one for the factfinder. As such, we find that genuine issues of material fact remained regarding Conhagen's negligence claims against Nelson.
We recognize that reversing an improperly granted motion for summary judgment after a full trial on the merits places a "potential imposition on the resources of the courts and litigants." Williams v. City of New Orleans , 93-2043 (La. App. 4 Cir. 5/17/94), 637 So.2d 1130, 1133. However, the partial granting of Nelson's Motion for Summary Judgment deprived this Court "of an adequate record upon which we could render a judgment on the merits." Id. A full trial on all issues is required to provide the parties ample opportunity to present evidence of Nelson's alleged negligence. "We have no recourse but to remand this matter" for further proceedings consistent with this opinion. Id.
REMAINING ASSIGNMENTS OF ERROR
As we reversed the trial court's partial grant of Nelson's Motion for Summary Judgment, which requires a remand, we pretermit discussion of the remaining assignments of error on appeal.
DECREE
For the above-mentioned reasons, we find that the trial court erred by partially granting Nelson's Motion for Summary Judgment and dismissing Conhagen's negligence claims against it. Conhagen and Ruhrpumpen were then prevented from presenting evidence of Nelson's negligence at the trial on the merits. A new trial on the issues will allow the admittance of such evidence. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED
LOBRANO, J., CONCURS IN THE RESULT

Ruhrpumpen sought expedited supervisory review of the judgment denying its Motion for Summary Judgment, but this Court denied writs. Conhagen v. Ruhrpumpen , 16-1226 (La. App. 4 Cir. 11/30/16). Review by the Louisiana Supreme Court was not sought.