| ALFRED CONHAGEN, INC. | * | NO. 2021-CA-0396 |
| OF LOUISIANA | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| RUHRPUMPEN, INC. AND | | FOURTH CIRCUIT |
| WALDEMAR S. NELSON AND | * | |
| COMPANY, INC. | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

**CONSOLIDATED WITH:**         **CONSOLIDATED WITH:**

**ALFRED CONHAGEN, INC. OF**         **NO. 2021-CA-0397**
**LOUISIANA**

**VERSUS**

**RUHRPUMPEN, INC. AND**
**WALDEMAR S. NELSON AND**
**COMPANY, INC.**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-07056, DIVISION "F-14"
Honorable Jennifer M Medley,
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Paula A. Brown)


Gerald A. Melchiode
Renee S. Melchiode
James J. Reeves, II
MELCHIODE MARKS KING LLC
639 Loyola Avenue, Suite 2550
New Orleans, LA 70113


    COUNSEL FOR PLAINTIFF/APPELLEE

Roy Clifton Cheatwood
Aubrey Bernard Hirsch, Jr.
Leopoldo J. Yanez
J. Alexander Bruce
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170

Richard G. Duplantier, Jr.
John F. McCormick
Jennifer R. Buckingham
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
701 Poydras Street
4040 One Shell Square
New Orleans, LA 70139


COUNSEL FOR DEFENDANT/APPELLANT


**JUDGMENT AMENDED; AFFIRMED AS AMENDED**
**APRIL 13, 2022**

In this second appeal, Defendants, Ruhrpumpen, Inc. and Waldemar S. Nelson and Company, seek review of the trial court's judgment in favor of Plaintiff, Alfred Conhagen, Inc. of Louisiana. Given that the trial court erred in failing to allocate fault, we amend the judgment to correct these errors. Accordingly, we affirm the judgment as amended.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background and procedural history of this case are set forth in the opinion rendered by this Court in the prior appeal as follows:

> Healtheon, Inc. ("Healtheon"), a general contractor, assembled a design-build team to create a bid on a NASA Stennis Space Center pump installation project. Healtheon contacted Alfred Conhagen, Inc. of Louisiana ("Conhagen") to provide the high pressure water pump system as the mechanical subcontractor. Conhagen then suggested that Waldemar S. Nelson and Company, Inc. ("Nelson") for design engineering services. Ruhrpumpen, Inc. ("Ruhrpumpen") provided Nelson with a quote on a pump package for the project. Conhagen relied upon Ruhrpumpen's quote of $734,480.00 to construct a proposed bid. However, Ruhrpumpen's final quote was $1,793,360.00.
>
> As a result of the increase of over a million dollars, Conhagen contends that it had to seek other materials at the last minute, which cost a substantial amount of money. Thus, Conhagen filed a Petition for Damages against Ruhrpumpen and Nelson contending that they

1

were negligent and caused Conhagen to rely to its detriment on the initial quote. Nelson filed a Motion for Summary Judgment asserting that no genuine issues of material fact existed because it was not negligent and did not cause Conhagen to detrimentally rely upon the initial quote. Ruhrpumpen also filed a similar Motion for Summary Judgment. The trial court denied all of the Motions for Summary Judgment except for Nelson's Motion for Summary Judgment regarding negligence. The trial court granted Nelson's Motion for Summary Judgment in part and dismissed all of Conhagen's negligence claims against Nelson with prejudice.

The matter proceeded to trial. Following a three-day bench trial, the trial court issued a judgment finding Ruhrpumpen one hundred percent liable to Conhagen based on negligence and detrimental reliance. The trial court found that Nelson was not liable for damages resulting from alleged detrimental reliance. The trial court awarded Conhagen $927,560.30, plus interest and court costs from Ruhrpumpen.

*Alfred Conhagen, Inc. of Louisiana v. Ruhrpumpen, Inc.*, 2018-0414 (La. App. 4 Cir. 12/19/18), 262 So.3d 306, 308, *writ denied*, 2019-0126 (La. 3/18/19), 267 So.3d 94.

In the first appeal, this Court reversed the trial court's partial grant of Nelson's summary judgment on the negligence claim, and remanded the case for a "full trial on all issues[.]" *Alfred Conhagen, Inc. of Louisiana*, 2018-0414, p. 8, 262 So.3d at 311. On remand, the trial court held a trial on the issue of Nelson's negligence.[1] Following the submission of post-trial briefing, the trial court rendered a judgment in the amount of $927,560.30, finding Ruhrpumpen liable under the theories of detrimental reliance and negligence, and finding Nelson liable for negligence. Notably, the trial court did not apportion fault between the parties.

---

[1] During the second trial, the trial court took judicial notice of the previous trial record, including the transcripts and exhibits.

After the trial court denied Defendants' motions for new trial, each filed a suspensive appeal.[2] This Court consolidated the two appeals.

**STANDARD OF REVIEW**

On appellate review, the trial court's findings of fact are reviewed under a manifest error or clearly wrong standard. *Hall v. Folger Coffee Co.*, 2003-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. Under that standard, this Court cannot reweigh the evidence or substitute the factual findings to decide the case differently. *Id.* Further, as factfinder, the trial court can accept or reject, in whole or in part, any witness's testimony including expert witnesses. *Levine v. Allstate Ins. Co.*, 2017-0896, p. 3 (La. App. 4 Cir. 4/18/18), 243 So.3d 1286, 1288.

With respect to issues of law, however, the standard of review of an appellate court is whether the court's interpretative decision is legally correct. *Glass v. Alton Ochsner Medical Foundation*, 2002-0412, p. 3 (La. App. 4 Cir. 11/6/02), 832 So.2d 403, 405 (citation omitted). Furthermore, if the decision of the district court is based on an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court. *Id.*

**DISCUSSION**

Ruhrpumpen and Nelson each raise numerous assignments of error pertaining to liability and fault.[3] Further, Ruhrpumpen raises one individual

---

[2] Though Conhagen answered the appeal, it requested that if this Court decides to allocate fault, the allocation should be between the two Defendants. La. C.C.P. art. 2133 states: "An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." Since Conhagen was not requesting an alteration in the judgment, an answer to the appeals was not required.

[3] Ruhrpumpen asserts six assignments of error: 1) the District Court committed legal error by refusing to comply with this Court's directive and narrowing the scope of this Court's remand

3

assignment of error concerning a procedural trial issue. Nelson also asserts an individual assignment of error relative to the admission of evidence. We will first address Ruhrpumpen's procedural trial issue followed by Nelson's evidentiary issue. Then, we will turn to the mutual liability and fault issues.

**TRIAL PROCEDURE**

First, as to the trial procedure issue, Ruhrpumpen asserts that the trial court erred when it refused to hold a second trial on all of the issues, in violation of this Court's directive. Prior to this Court's remand, the trial court held a trial on the issues of Ruhrpumpen and Nelson's detrimental reliance, and the issue of Ruhrpumpen's negligence. On appeal, this Court reversed the trial court's summary judgment in favor of Nelson on the negligence claim. Accordingly, it remanded the case for a "full trial on all issues[.]" *Alfred Conhagen, Inc. of Louisiana*, 2018-0414, p. 8, 262 So.3d at 311.

---

for a full trial on all issues to include only the issue of Nelson's negligence; 2) the District Court committed legal error when it held Ruhrpumpen liable to Conhagen for its alleged damages based on an expired budget quote; 3) the District Court committed manifest error in holding Ruhrpumpen liable for detrimental reliance; 4) the District Court committed manifest error in holding that Ruhrpumpen was liable for negligence; 5) the District Court committed error by not allocating comparative fault to Conhagen and Nelson as required under La. Civ. Code arts. 2323 and 2324; and 6) the District Court erred in finding the change in price between the First Budget Quote and Second Budget Quote caused Conhagen's injuries and thus also erred in calculating the damages based on the difference between the First Budget Quote and the purchase price for different and more expensive equipment, which Conhagen found necessary to purchase after it learned of technical concerns.

Nelson asserts seven assignments of error: 1) the trial court erred in denying Nelson's Motion for Involuntary Dismissal at the close of Conhagen's case-in-chief; 2) the trial court erred in finding that Conhagen met the burden of proof to establish negligence against Nelson; 3) the trial court erred in finding that Nelson owed a duty to Ruhrpumpen; 4) the trial court erred in finding that Ruhrpumpen has standing to establish liability against Nelson for Conhagen's damages; 5) the trial court erred in finding no liability on the part of Conhagen for its own damages; 6) the trial court erred in finding that Ruhrpumpen and Nelson are solidary obligors; and 7) the trial court erred by failing to allocate fault to the Defendants as required by La. C.C. articles 2323 and 2324.

4

On remand, the trial court took judicial notice of the previous trial record including the transcripts and exhibits. Then, it proceeded to a second trial on the issue of Nelson's negligence.

Ruhrpumpen argues that the trial court erred in narrowing the scope of trial in violation of this Court's order on remand. We disagree. Once the trial court conducted a trial on the remaining negligence claim against Nelson, it completed a full trial on all issues in accordance with this Court's remand order.[4] Given that the trial court legally complied with this Court's remand order, there was no legal error.

## ADMISSION OF EVIDENCE

Next, as to the evidentiary issue, Nelson asserts the trial court erred in allowing Ruhrpumpen to admit evidence of Nelson's negligence. A trial court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. *Boutte v. Kelly*, 2002-2451, p. 23 (La. App. 4 Cir. 9/17/03), 863 So.2d 530, 547-48.

As discussed, at the second trial on Nelson's negligence, the trial court took judicial notice of the prior trial record. In response, Conhagen rested its case on the evidence already admitted. At that time, Nelson moved for an involuntary dismissal, which was denied by the trial court. Part of Nelson's argument was that the record was complete once Conhagen rested its case because Ruhrpumpen did not assert an affirmative defense or a cross-claim in negligence against Nelson.

_____

[4] While a full re-trial could also be in compliance with this Court's remand order, the conduct of the trial is within the discretion of the trial court, and that discretion is subject to review only for abuse of that discretion. *Barre v. Bonds*, 99-1806, p. 23 (La. App. 4 Cir. 5/10/00), 763 So.2d 60, 70 (citing La. C.C.P. art. 1631); *Balashov v. Baltic Shipping Co.*, 96-1129 (La. App. 4 Cir. 1/22/97), 687 So.2d 1101. Given that the trial court reasonably narrowed the second trial for judicial efficiency purposes, we cannot say the trial court's decision was an abuse of discretion.

Though Ruhrpumpen did not assert such claims, Conhagen asserted a negligence claim against both Ruhrpumpen and Nelson. Additionally, Nelson asserted comparative fault as an affirmative defense in its answer.

Citing to this Court's remand, the trial court allowed Ruhrpumpen to admit evidence of Nelson's liability on the negligence claim. It reasoned that due to Conhagen's negligence claim pursuant to La. C.C. art. 2315, Ruhrpumpen could present evidence of any sharing of fault. Specifically, the Court stated: "The real issue at this juncture is whether or not there is any sharing of any judgment between Nelson and Ruhrpumpen[.]" Under these circumstances, we cannot say the trial court abused its discretion in allowing Ruhrpumpen to present evidence of Nelson's negligence, which was relevant to liability and the apportionment of fault pertaining to Conhagen's negligence claims against both defendants.

More specifically, Nelson asserts that the trial court erred in allowing Ruhrpumpen to admit evidence to establish that Nelson was liable to Ruhrpumpen for negligence. Complaint of an alleged erroneous evidentiary ruling "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." La. C.E. art. 103. The effect of an erroneous evidentiary ruling is that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." La. C.E. art. 103. "The concept of 'substantial right' as used in article 103 is 'akin to the 'harmless error'' doctrine applicable in both civil and criminal matters." *Richardson v. Richardson*, 2007-0430, p. 14 (La. App. 4 Cir. 12/28/07), 974 So.2d 761, 771-72 (quoting George Pugh, Robert Force, Gerald Rault and Kerry Triche, *Handbook on Louisiana Evidence Law*, p. 300 (2006 Ed.). The jurisprudence has

6

"properly taken the view that the risk of prejudice is often less likely in a bench trial than in a jury trial." *Id*.

In this bench trial, the trial court appropriately weighed the relevant evidence concerning Conhagen's negligence claim against Nelson. Moreover, in its judgment, the trial court did not find Nelson liable to Ruhrpumpen. Rather, it found Nelson and Ruhrpumpen liable to Conhagen. Assuming *arguendo* the trial court erred in admitting evidence of Nelson's liability to Ruhrpumpen, any perceived error was harmless.[5]

**LIABILITY**

Turning to the liability issues, both Ruhrpumpen and Nelson raise assignments of error concerning the sufficiency and correctness of the trial court's judgment on liability for negligence.

Liability in a negligence action is determined by employing a duty/risk analysis. *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 4 (La. 11/30/94), 646 So.2d 318, 321. To establish the liability of a defendant pursuant to this analysis, a plaintiff must prove five separate elements: 1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); 2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); 3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, 5) actual damages (the damages element). *Mathieu*, 94-0952, pp. 4-5, 646 So.2d at 322.

---

[5] While Nelson asserts that the trial court erred in finding that Nelson owed a duty to Ruhrpumpen, the trial court made no such finding after admitting evidence on that issue.

The testimony at trial revealed that Healtheon was putting together a design-build proposal for NASA for a pump installation project.[6]  Healtheon approached Conhagen to be the mechanical subcontractor for the project.  In turn, Conhagen recommended Nelson.  As a result, Healtheon entered into a teaming agreement with Nelson, for design engineering services in April of 2014.  Healtheon, Conhagen, and Nelson (the team) had an initial meeting to discuss each party's role in their joint effort to win the bid for the project.  After their collaboration, Nelson came up with a proposed technical solution, which was later approved by NASA.  The solution involved three major component parts: 1) a pump, 2) fluid coupling, and 3) a synchronous motor.

Nelson's role evolved into reviewing the pump packages and pricing.  Wayne Hingle, a mechanical engineer at Nelson, testified that he found Ruhrpumpen through an internet search.  William Berg, a mechanical engineer with Nelson, began communications with Ruhrpumpen in an effort to obtain a budget estimate.  On May 13, 2014, Mr. Berg provided the required pump components to Ruhrpumpen in an e-mail.  Ruhrpumpen, through Debra Ingram, submitted a budget quote to Nelson by email on May 17, 2014, in the amount of $734,480.00.  Unbeknownst to the team, Ruhrpumpen's quote was underbid by approximately one million dollars.  In particular, Ruhrpumpen's quote did not contain the correct motor, or fluid coupling.

At that time, the team had received two other quotes.  Between the three quotes, there was a broad range in pricing with Ruhrpumpen's price being the lowest. While the testimony reflects that budget quotes should be reasonably

---

[6] NASA was testing a larger rocket and needed a high-pressure water pump that could pump water from a pond to the rocket test pad to aid in cooling and sound reduction.

8

reliable unless there is some major change to the equipment specifications, the team made an effort to resolve the discrepancies. In order to confirm Ruhrpumpen's price, Mr. Berg asked Ms. Ingram to verify the scope of the pricing with the required parts, which she confirmed via e-mail. As such, Nelson facilitated a meeting with Conhagen and Healtheon to discuss the disparities. Though Nelson believed the quote to be suspect, that information was not relayed to Conhagen. Instead, Nelson represented that Ruhrpumpen's quote was the only quote that matched the desired specifications, which justified the price disparity. Satisfied with this explanation from Nelson, Healtheon and Conhagen agreed to submit the proposal using Ruhrpumpen's quote. As a result, from May through August, 2014, the team began working with Ruhrpumpen to develop the final specifications for the design-build.

Conhagen reached out to Ruhrpumpen and introduced itself as the entity preparing the proposal for Healtheon. Mr. Eric Heidingsfelder, the Vice-President of Conhagen, communicated with Ruhrpumpen, by telephone and e-mail, regarding weights and sizing for its proposal. Specifically, Conhagen, via e-mail on May 22, 2014, raised an issue with the fluid coupling not being rated for the required horsepower and speed. As a result, it asked Ruhrpumpen to review it.

On May 26, 2014, the day before the proposal was due to Healtheon, Mr. Hingle asked Ms. Ingram to provide a cost breakdown by component. The following day, she responded that she did not want to do that because she did not have any firm quotes and the price could change. Mr. Hingle did not forward this information to Conhagen. On June 23, 2014, Conhagen notified Ruhrpumpen it submitted its quote in their proposal.

Ultimately, NASA selected Healtheon as the general contractor, and Healtheon sent a notice of intent to contract with Conhagen on June 27, 2014. Ruhrpumpen continued working with the team on the specifications for the project. In mid-July of 2014, Ruhrpumpen began to receive buyout quotes for the motors, which were much higher than that quoted initially. However, rather than notify the team of a major price discrepancy, Ruhrpumpen remained silent and continued with the project. After multiple requests for a final quote, on July 28, 2014, Ms. Ingram falsely represented to Conhagen that she had not received any buyout quotes from the vendors. In early August, she informed Mr. Heidingsfelder that she would advise him if there was a problem with the final quote. However, Ms. Ingram never notified Mr. Heidingsfelder with any issues concerning the final quote. Finally, on August 21, 2014, Ruhrpumpen submitted a second quote in the amount of $1,793,360.00, a difference in $1,058,880.00 from the first quote.

Upon receiving the second quote, Conhagen immediately voiced its concern, to which Ruhrpumpen explained there was an error with the second quote. However, on August 26, 2014, Ruhrpumpen maintained that its second quote was correct. Consequently, Conahgen built the pump at the cost of approximately $1,672,040.00.

First, Ruhrpumpen asserts that the trial court erred in finding it liable to Conhagen for negligent misrepresentation.[7] It raises three arguments: 1) Conhagen lacked reasonable reliance on an expired budget quote; 2) Ruhrpumpen made no

---

[7] Ruhrpumpen also raises an assignment of error concerning the trial court's additional finding of liability on Conhagen's detrimental reliance claim. However, the detrimental reliance claim serves as an additional avenue by which Ruhrpumpen may be held liable for the same damages set forth in the negligence claim. Based on our affirmation of the trial court's judgment finding Ruhrpumpen liable to Conhagen for negligence, we pretermit discussion of this assignment of error.

misrepresentations; and 3) the change in price between the first budget quote and second budget quote was not the cause of Conhagen's injuries.

Louisiana has traditionally allowed recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent. *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1014 (La. 1993)(citations omitted). Thus far, the tort theory has developed case by case. *Id*. The approach of the appellate courts in the negligent misinformation cases has been to integrate the tort doctrine into the duty/risk analysis. They conclude, for the cause of action to arise - whether plaintiff is a third party or a party to the contract or transaction- there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage. *Barrie*, 625 So.2d at 1015.

Whether a duty is owed is a question of law. *Id*. In determining whether a duty is owed where a plaintiff alleges negligent representation and there is an absence of privity of contract or fiduciary relationship between the plaintiff and alleged tortfeasor, courts consider the factors articulated by the Louisiana Supreme Court in *Barrie*.

The *Barrie* factors are as follows: (1) courts must decide whether the tortfeasor could expect that the plaintiffs would receive and rely upon the information, (2) whether the plaintiffs are members of the limited group for whose benefit and guidance the report was contracted and supplied, (3) whether the report is prepared in the context of a business transaction for which the alleged tortfeasor received compensation or pecuniary interest, and (4) whether extending tort liability would serve public policy. *Id*.

In *Barrie*, the seller of a home obtained a termite inspection report that negligently concluded that the home had no evidence of a termite infestation. The buyers of the home sued the termite inspector, alleging negligent misrepresentation via faulty information contained in the termite inspection report. The Louisiana Supreme Court held that the termite inspector owed the buyers a duty to provide accurate information in the report even though the buyers were a third party to the contract between the inspection company and the seller. The court noted that "Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation when privity of contract is absent." *Barrie*, 625 So.2d at 1014.

Applying the first *Barrie* factor, we find that Ruhrpumpen could have expected Conhagen to receive and rely upon their budget quote. In *Barrie*, a duty was owed to plaintiffs (home-buyers) even though they were a third party to the defendant termite inspection company and the seller, without privity of contract, because plaintiffs were known to the defendant termite inspection company as intended users of the report. *Id*. at 1016. Likewise, in this case, Ruhrpumpen knew that Conhagen received its quote and would rely on it. It had various discussions and e-mail communications with employees of Nelson and Conhagen. Moreover, Mr. Heidingsfelder, of Conhagen, reached out to both Ms. Ingram and Mr. Matthew Minniard at Ruhrpumpen prior to using the quote. He also e-mailed Mr. Minniard specifically about the fluid coupling in Ruhrpumpen's proposal. Given these facts, the first *Barrie* factor is satisfied.

Applying the second *Barrie* factor, the Court finds that Conhagen was a member of a limited group for whose benefit and guidance the quote was composed to guide. As discussed, Nelson, the design engineer, obtained the quote

for the benefit of Conhagen, the mechanical subcontractor, and Healtheon, the general contractor, to assist with its proposal to NASA. Moreover, Ruhrpumpen proceeded with discussions and e-mail communications with Conhagen after submitting its proposal without expressing any confusion or surprise. Accordingly, the second factor has been met.

As to the third *Barrie* factor concerning compensation, the quote was prepared in the context of a design-build project. While Ruhrpumpen did not receive immediate compensation for preparing the quote, it had a substantial pecuniary interest in being selected as the supplier of the pump equipment because a substantial purchase order would follow. As such, the third factor weighs slightly in favor of imposing a duty.

The fourth *Barrie* factor requires the Court to determine whether extending tort liability in a particular instance would serve public policy. In *Barrie*, the Louisiana Supreme Court weighed in on the public importance of licensed pest control operators rendering accurate and reliable information when composing their reports. In discussing the fourth *Barrie* factor, the Court held:

> Tort liability extending to third persons for whose benefit and guidance the wood destroying insect report is supplied, promotes the maintenance of a high quality of services by the licensed structural pest control operator and imparts confidence in those services to the contracting party and to those persons who, due to current business practices, are expected to receive and rely upon the contents of the report. Therefore, the duty to use reasonable care and competence in obtaining the information for the wood destroying inspect report and communicating it to the prospective buyers of the dwelling existed as a matter of law.

*Barrie*, 625 So.2d at 1017-18. This Court finds similar policy implications in the present case. As stated above, the Louisiana Supreme Court reasoned that imposing liability on inspection companies so that those companies would be more

diligent in composing their reports would benefit not only the contracting party, but also "those persons who, due to current business practices, are expected to receive and rely upon the contents of the report." *Id.* This reasoning assumes and relies on the fact that the alleged tortfeasor will know those parties that are expected to receive the tortfeasor's report. Focusing on this final factor, the *Barrie* court reasoned that "[t]he obligation for the liability is imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user." *Id.* (citing *Glanzer v. Shepard*, 135 N.E. 275 (1922)).

Here, the same reasoning can be applied. Conhagen was a foreseeable third party who was "expected to receive and rely upon the contents" of the quote in the context of a design-build construction project, where obtaining correct quotes from potential sub-contractors is crucial. Under these circumstances, extending liability would serve public policy. Thus, the fourth and final *Barrie* factor is met. In light of this Court's analysis and application of the *Barrie* factors, we find Ruhrpumpen had a legal duty to supply the correct information to Conhagen.

We further find that Ruhrpumpen breached its duty, causing Conhagen damages. The evidence and testimony confirmed that Ruhrpumpen and its employees grossly misrepresented pricing information to Conhagen, and Ruhrpumpen had a substantial pecuniary interest in being selected as the pump supplier for the proposal. In particular, the price it quoted was for the wrong motor and fluid coupling for the project, which resulted in a quote substantially lower than the actual price. While the quote was expired by the time it was used,

14

Ruhrpumpen tacitly confirmed and re-confirmed the use of its quote in telephone and e-mail communications with Conhagen.

Relying on the incorrect quote, Conhagen grossly underbid the project proposal to Healtheon. As a result, Conhagen suffered damages because it had to build the pump, which cost almost one million dollars more than what Ruhrpumpen initially quoted. Ruhrpumpen and its employees negligently, if not intentionally, communicated inaccurate and misleading information in its budget quote.[8] Moreover, Ruhrpumpen failed to exercise competence in ensuring the quote obtained matched the specifications for two of the three major components required for the project. Further, upon receiving the buy-out quotes at much higher prices, Ruhrpumpen failed to communicate any potential problems with its quote to Conhagen. Instead, Ruhrpumpen maintained they were still waiting on the buy-out quotes from the vendors. Conhagen's reliance on the grossly incorrect quote was justified and caused harm.

In support of its sufficiency arguments, Ruhrpumpen offers an alternative view of the evidence wherein it concludes it was not liable to Conhagen. However, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). Under these circumstances, the trial court did not err in the holding that Ruhrpumpen was liable for negligent misrepresentation to Conhagen.

Next, Nelson asserts that the trial court erred in finding that Conhagen met its burden in proving negligence. Therefore, it concludes that the trial court

---

[8] Notably, a few days after submitting a budget quote to Nelson, Ruhrpumpen submitted an even lower quote to another vendor quoting the same proposal.

incorrectly denied its motion for an involuntary dismissal at the close of Conhagen's case.

The trial record reflects that Nelson was hired as the engineer and its role evolved into reviewing bids and vetting pricing. Nelson's own employees recognized its duty to accurately vet the price quotes and advise of any concerns or discrepancies.

Nelson brought Ruhrpumpen into the project and often communicated directly with Ruhrpumpen on behalf of the team. Nelson acknowledged its duty to warn Conhagen of any concerns or discrepancies concerning the pump packages and pricing. Moreover, Conhagen relied on Nelson's engineering expertise to determine what pump package was best for the job. Nelson believed Ruhrpumpen's bid to be suspect, yet it remained silent in its meetings with Conhagen about any concerns. Specifically, Nelson assuaged Conhagen's concerns about the disparity in pricing by explaining that Ruhrpumpen's package was the only package with the applicable components as stated in the initial specifications. More concerning, Ruhrpumpen communicated directly to Nelson that its prices could change the day the bid was submitted, yet Nelson never relayed that information to Conhagen.

When "the negligence complained of was so obvious that a layperson can infer negligence without the guidance of expert testimony, such as fracturing a leg during an examination, amputating the wrong limb, or leaving a sponge in a patient's body," expert testimony is not required. *Alfred Conhagen, Inc. of Louisiana*, 2018-0414, p. 5, 262 So.3d at 310 (citation omitted). As with physicians in an action for medical malpractice, the same is also true for engineers who commit common sense infractions. *Id*.

In light of its admitted professional duty to warn, Nelson committed such a common sense infraction when it failed to warn Conhagen of its concerns regarding a potential price increase, which caused Conhagen damages. Given the foregoing circumstances, we find that Conhagen met its burden of proving Nelson's negligence.

As to the motion for an involuntary dismissal, this Court reviews the trial court's ruling under a manifest error standard of review. *Ridgeway v. Pierre*, 2006-0521, 2006-0522, p. 4 (La. App. 4 Cir. 1/11/07), 950 So.2d 884, 888 (citations omitted). Given that Conhagen met its burden in proving Nelson's negligence, we cannot say that the trial court was manifestly erroneous in denying the motion for involuntary dismissal.

For these reasons, the trial court's judgment finding both Ruhrpumpen and Nelson liable in negligence is affirmed.

## FAULT

Turning to fault, Nelson asserts that the trial court erred in finding that the defendants were solidary obligors. In *Berlier v. A.P. Green Indus., Inc.*, 2001-1530, p. 7 (La. 4/3/02), 815 So.2d 39, 44, the Louisiana Supreme Court provided an explanation of "obligations involving multiple persons recognized under Louisiana law, which are several, joint, and solidary obligations." *See also* La. C.C. art. 1786.[9] Under La. C.C. art. 1794, "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance" and "[a]

---

[9] La. C.C. art. 1786 states: "When an obligation binds more than one obligor to one obligee, or binds one obligor to more than one obligee, or binds more than one obligor to more than one obligee, the obligation may be several, joint, or solidary."

performance rendered by one of the solidary obligors relieves the others of liability toward the obligee."[10]

"Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor." La. C.C. art. 1803. Further, La. C.C. art. 1804 provides:

> **Among solidary obligors, each is liable for his virile portion.** If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. **If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor."** (Emphasis added).

The primary effect of solidary liability is that any tortfeasor may be compelled to pay the entire judgment. La. C.C. art. 1794.

In its reasons for judgment, the trial court found that both defendants were obliged to provide an accurate quote to Conhagen. As such, the obligation was indivisible, making each defendant liable for the same damages such that payment by one exonerated the other. Given that the defendant's debt is co-extensive for the same obligation, we find no error in the trial court's judgment.

However, we find defendants' assignments concerning the apportionment of comparative fault to be meritorious pursuant to La. C.C. arts. 1804, *supra,* and 2323. La. C.C. art. 2323(A) provides, in pertinent part:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the

---

[10] On the other hand, "a joint obligation is one where different obligors owe together just one performance to one obligee, or where one obligor owes just one performance intended for the common benefit of different obligees." *Id.*, 2001-1530, p. 11, 815 So.2d at 46 (citing La. C.C. art. 1788).

provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

In *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-477, p. 14 (La. 10/14/15), 181 So.3d 656, 666-67, the Louisiana Supreme Court recited the well-established factors a court considers in evaluating fault:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior, and, (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.

A trial court's factual findings regarding percentages of fault cannot be reversed absent clear error. *Purvis v. Grant Par. Sch. Bd.*, 2013-1424 (La. 2/14/14), 144 So.3d 922. We find such error is present on this record in the trial court's failure to apportion any fault. Having found clear error, we are now charged with apportioning fault, but only to "the highest or lowest point respectively which is reasonably within the trier of fact's discretion." *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408, p. 21 (La. 3/16/10), 35 So.3d 230, 244.

After reviewing the record in light of the factors recited above, we do not find that Conhagen bears any fault. Conhagen owed no duty to Ruhrpumpen or Nelson. Moreover, Nelson explained the difference in the three initial quotes, which resolved Conhagen's initial price concerns. Further, though it was relying on the defendants' expertise, in an attempt to ensure accurate pricing, Conhagen communicated with Ruhrpumpen and raised an issue with the fluid coupling.

As to the defendants' fault, we observe that Ruhrpumpen was in a superior position to prevent injury. While Nelson's silence was a contributing factor, the injuries would not have occurred had Ruhrpumpen correctly quoted the pump package at the outset. Moreover, Ruhrpumpen continued working on the project,

and made false representations to Conhagen concerning the status of buyout quotes. Therefore, we conclude that Ruhrpumpen must bear a greater percentage of fault. Accordingly, we amend the trial court's judgment, and apportion eighty percent (80%) fault to Ruhrpumpen and twenty percent (20%) fault to Nelson.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is amended to apportion eighty percent (80%) fault to Ruhrpumpen, Inc. and twenty percent (20%) fault to Waldemar S. Nelson and Company. As amended, the judgment is affirmed.


**JUDGMENT AMENDED; AFFIRMED AS AMENDED**